IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America | : | |
| | : | |
| Plaintiff | : | Case No. 2:14CR189 |
| | : | |
| v. | : | Judge Michael H. Watson |
| | : | |
| Cynthia S. Mild | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT CYNTHIA S. MILD'S SENTENCING MEMORANDUM**

Defendant, Cynthia S. Mild, by and through counsel, respectfully submits this Sentencing Memorandum to provide the Court with additional history and information of the Defendant.

The Defendant respects and agrees with the Government's recommendation in its Sentencing Memorandum and in following the Plea Agreement, under 11(c)(1)(c) of the Federal Rules of Criminal Procedure. The Defendant also is in agreement with the recommendation set forth in the Probation Department's Pre-Sentence Investigation Report (PIR). Additionally, the Defendant submits mitigating information to be considered by the Court to assist in finalizing the recommendations in the PIR and as set forth in 18 U.S.C. § 3553(a). Further, the Defendant, as agreed in the Plea Agreement, has paid the $100.00 special assessment, pursuant to 18 U.S.C. § 3013, prior to this hearing.

In the PIR, it is determined that the Defendant's potential exposure is Guideline 21 with a Criminal History of I. The Guideline status a possible total of 36-46 months, based upon the calculations set forth in the PIR. Defendant does not dispute the guideline computation. The Defendant respectfully requests this Honorable Court to consider all

factors set forth in 18 U.S.C. § 3553(a) 1-7 and the agreed to 11(c)(1)(c). For the reasons set forth in the PIR and additional information included in this Memorandum, the Defendant respectfully request the Court to consider the total picture of her life when considering the final sentence.

### MEMORANDUM IN SUPPORT OF DEFENDANT CYNTHIA S. MILD

**I.     INTRODUCTION.**

On August 27, 2014 the U.S. Attorney filed a one count Information, charging the Defendant with 1 count of making False Statements in violation of 18 U.S.C. § 1001.

Prior to the Information, Defendant met several times with the Government to discuss the case and potential resolution of the issues alleged in the Information and other matters. The Defendant believes that the conversations were meaningful and expressed her position and beliefs during these meetings with the United States. The conversations were beneficial to both parties and a final Plea Agreement was reached between the parties, based upon these conversations.

As set forth in the PIR, the parties reached an agreement to terms that were set forth in the Plea Agreement, as to her relevant conduct. The numbers that were utilized in the Plea Agreement were based upon computations and information provided by the Defendant, explaining the process for several of the individual properties. Though the Government and the Defendant respectfully disagree on the actual loss, it was agreed that the financial data compiled by the Government reflects raw numbers as to relevant conduct and/or loss. However, the numbers did not incorporate nor take into account monies that were invested in the individual properties for rehabilitation, repair and maintenance. Also, the numbers did not take into consideration the appraised value of the individual homes or payments made by investors and or owners of these homes prior to the housing market collapse.

2

Further, the numbers do not account for values received from the later resale of the properties.

The parties do agree that the numbers set forth in the PIR, on page 3, as to Relevant Conduct, do reflect the actual monies involved, per closing statements on the completed transactions. Though the Defendant does not believe that she was the actual recipient of some of the funds on the HUD statement, for the reasons stated above. However, she does accept responsibility for the transactions that created the values discussed.

## II.     OFFENSE LEVEL COMPUTATION.

Under the landmark Decision of United States v. Booker, the Sentencing Guidelines are no longer binding on the Court. Instead, the court The Court must look to multiple factors outlined in 18 U.S.C. § 3553(a) and impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing. United States v. Forman, 436 F.3d 638, 644 n. 1 (6th Cir. 2006). In imposing its sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7). Id. (Suggesting the Court should consider the Guideline Range as one factor of all seven factors, stated under § 3553(a). In addition to these factors, there are other considerations that are involved in the statutory scheme of sentencing. See, 18 U.S.C. § 3553(a)(1)-(7), United States v. McBride, 434 F. 3d 470, 475-76 (2006), detailing that guidelines are just one of several factors that must be considered by the Court. The additional factors that play an integral role in determining a sentence, include "history and characteristics of the offender", "the need to avoid unwarranted sentencing disparities", and the "need to afford adequate deterrents". See 18 U.S.C. § 3553(a)(1-7).

For the reasons set forth below, the Defendant believes that the terms of the Plea Agreement (including the 11(c)(1)(c) agreement), are appropriate and reasonable. Ms. Mild

3

believes the information contained herein demonstrates that her actions in this case are not a true indication of who she is as an individual. Though she accepts her responsibility for her poor choices, the sentence, as proposed under Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure achieves the purposes of deterrence and satisfy the purpose set forth in the PIR.

Additionally, the Defendant is in agreement with the calculations and the recommendation set forth in the Government's Sentencing Memorandum.

### III.     18 U.S.C. 3553 CONSIDERATION

The Sentencing Guidelines are no longer mandatory. But instead, are now considered advisory, under United States v. Booker, 543 U.S. 220 (2005).    After the Supreme Court's decision in Booker, "District Courts have enhanced discretion in the sentencing of criminal defendants." United States v. Jackson, 408 F.3d 301, 304 (Sixth Circuit 2005). "[D]istrict Courts are required to consider the applicable Guidelines sentencing range when arriving at a defendant's sentence, 18 U.S.C. § 3553(a)(4), but only as one factor of several laid out in Section 3553(a)." *Id.* (Citing Booker 125 S. Ct. at 764).

The Sixth Circuit explains that a District Court must (1) acknowledge the defendant's applicable Guideline range; (2) discuss the reasonableness of any variation from that range; and (3) consider the other factors identified in 18 U.S.C. § 3553(a). *Id.*

Factors to be considered are identified in Section 3553(a), suggest a sentence below the Guidelines range would be appropriate for the Defendant. Though a sentence within the applicable Guidelines range is presumably reasonable, a sentence below the application Guidelines range is not presumably unreasonable. *See United States v. Foreman,* 436 F.3d 638, 644 (6 Cir. 2006). In reviewing a sentence below the Guidelines range for reasonableness, the Sixth Circuit looks to whether the district court considered the

relevant § 3553(a) factors. *Id.* The Sixth Circuit explains, "a district court's mandate is to impose `a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)." *Id.* at n.1 (quoting 18 §3553(a)).

Section 3553(a) states:

> (a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed —
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the Sentencing Guidelines];
> (5) [the policy statements issued by the Sentencing Commission;]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

**IV.  HISTORY AND CHARACTERISTICS OF THE OFFENDER.**

As the Court is aware, the Defendant provided an extensive statement of facts in the PIR (20).  The Defendant acknowledged and accepted full responsibility for all of her actions.   At the time, she may have believed that she was acting with disclosure and properly, she recognizes that she was in error.   She also put or put too much faith in others, during this time and did not follow through with due diligence.

5

However, her underlying focus was always to provide for her family. Because of personal pressures and financial pressures, the Defendant took liberties with the signing of documents that under the law, were false. This was not an overt plan to scheme, on her part, however, as a result of negligence, lack of thorough understanding, with some poor advice from others that may have been involved in similar types of transactions. It was not an intent designed to defraud banks of funds or to put people in homes that were unable to maintain payments. Unfortunately, those were the end results of her actions.

The PIR outlines some of the Defendant's personal life that created many of the pressures and stressors that were placed upon her shoulders for the care of her family. Though it is minimized in her statement, her parents' divorce was a major event in her youth. The divorce occurred while she was in grade school. Subsequent to the divorce, the family was obviously divided. Further, her father became very distant and was extremely critical of her and/or the family and was always confrontational on the rare occasions conversations took place. Fortunately, these conversations were limited. The communications often became volatile, which led to no positive results. Additionally, her father did not provide support for her or her brother, during their formative years and high school years.

Though the Defendant minimizes the divorce, though it is very clear that it had a major impact upon her youth and her development. Dealing with individuals that were always confrontational, extremely critical and destructive, became a regular way of life. The Defendant took on many jobs during this timeframe, to help provide money for herself, her brother and her mother.

The family background also was the basis for the Defendant leaving the home

as soon as possible, after high school. It was an escape from a stark reality, which she did not want to deal with. Once she left the house, she attended college until she had her first child. Subsequent to the birth of her child, she became the sole provider for this individual also. However, she was able to pull things together, which enabled her to go back to college and ultimately obtain her degree in business administration. She was also able to take tax and accounting courses, which enabled her to become an Enrolled Agent with the Internal Revenue Service.

As outlined in the PIR (20), she subsequently was married and a second child was born. The PIR outlines the medical conditions of both children and in particular, the youngest son, who has Type 1 Diabetes.

During her marriage, she became aware of significant medical issues, with her husband. As addressed briefly in her statement in the PIR, these issues ultimately led to fear for own safety and security. Additionally, she feared for both of her children, due to the volatility of the illness, that her husband was suffering from. Unfortunately, these issues still exist today, which have created a very limited relationship between her former husband and her children. Dealing with his illness, her children's issue and the financial situation of which she found herself in, created an extraordinary amount of stress. At the same time, she was attempting to handle all of this on her own, with minimal support.

It is clear the Defendant's major concern was taking care of her family, emotionally and financially. Though she made errors (as evidenced by this case), her goal was always to protect her family. As a result of her youngest son's medical condition and medical bills became a major issue, which compounded her concerns and stress. Further, her youngest son has now been diagnosed with genetically

inherited health issues, from his biological father.  Without going into detail on these issues, it causes additional concern and a necessity for additional medical treatment and counseling.

Though the Defendant has had a rather solitary past and utilized poor judgment in this case, the genesis for all of her decisions is based upon the health, welfare, safety and financial stability of her family.  This is not a defense to the actions at hand, however, it demonstrates the background as to why things happen to individuals under stressful times, during their life.  As this Court is aware, the fear of survival often causes decisions that individuals would never make, if not faced with dire and severe circumstances.  The Defendant's statement in the PIR outlines the circumstances which she found herself in.

As a result of the instant case, the Defendant has now found herself in yet a worse position.  Two of the three employers (Turbo Tax and Property Management) have terminated their contract and relationship with the Defendant.  Presently, she still maintains a contract with one of the property management companies. However, it is being reviewed which may result in her termination from that contract. Presently, she has lost 2/3 of her income, as a result of this case and her actions that led to this matter.  It is clear that lifestyle changes will result from this matter.  She will have to find alternative employment, to continue to provide for her family and maintain financial stability.  Unfortunately, she will be burdened with the after effects of this case, as she tries to seek and/or maintain employment.  In today's competitive market, she will be under a disability in pursuing new employment, as a result of having a criminal conviction.

The Defendant is very appreciative of the Government's understanding and cooperation in resolving this matter.  As stated earlier, conversations with the Government helped to clarify what actually took place, which often times can be completely different from looking at numbers and documents.  Clearly, this is a very emotional and mentality exhausting time for the Defendant and her family.  Hopefully, the Court agrees with the recommended sentence under 11(c)(1)(c) and can provide additional guidance to the Defendant in assisting to reconstruct her life and the ability to provide for her family.

Under the circumstances, it is also clear that the Defendant's ability to provide for just her family and herself is extremely compromised.   If restriction is ordered, it will further complicate her financial situation.   Therefore, the Defendant respectfully requests the mercy of the Court with regard to the recommended sentence and any additional issues that the Court may order.

**V.	CONCLUSION.**

We respectfully request that the Court consider all of the factors that are stated above and apply 18 U.S.C. § 3553 in exercising its discretion as to considering the Defendant's sentence.  There is no doubt as to her involvement in the case nor is acceptance.
The Defendant fully recognizes the severity of the facts of this case.  She is aware of the circumstances surrounding this case and of the potential harm that may have occurred from her actions.  She does not have a defense to her actions, however, consideration of 3553 factors justify the suggested lesser sentence when reviewed in the totality of her life.

As a result of her own actions, the Defendant has put herself at the mercy of the Court.

For all of the reasons stated above and in respectfully requesting the mercy of the Court, the Defendant hopes that the Court considers the agreed to and suggested sentence as set forth in the Plea Agreement and the PIR.

Respectfully submitted,

/s/ James D. Gilbert
JAMES D. GILBERT (0007624)
Millennium – 6065 Frantz Road, Ste. 105
Dublin, OH 43017
Jamesdgilbert@sbcglobal.net
Ph: (614) 766-5423/(614) 361-6230
Fax: (614) 766-2883
Attorney for Defendant Cynthia S. Mild

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon:

Daniel A. Brown, Assistant United State Attorney
Office of the United States Attorney
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215

via ECF Filing, on this 14th day of January, 2015.

/s/ James D. Gilbert
James D. Gilbert, Esq. (0007624)
Attorney for Defendant Cynthia S. Mild